IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JAIME HURTADO-BARBA,[1]

      Petitioner,

      v.                                  Civil Action No. 3:26cv188

PAUL PERRY, *et al.*,

      Respondents.

### MEMORANDUM OPINION

This matter comes before the Court on Petitioner Jaime Hurtado-Barba's ("Petitioner")

Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 ("§ 2241 Petition," ECF No. 1).

Petitioner is proceeding *pro se* in this matter, so the Court liberally construes his § 2241 Petition.

Petitioner challenges his detention by Immigration and Customs Enforcement ("ICE"), arguing

that ICE has improperly detained him subject to 8 U.S.C. § 1225 of the Immigration and

Nationality Act ("INA"). (ECF No. 1, at 6.)

For the reasons articulated below, the Court will grant the § 2241 Petition. The Court

will order Respondents to release Petitioner.

### I. Factual and Procedural Background

**A.**     **Factual Background**

Petitioner is a citizen of Bolivia. (ECF No. 5-1 ¶ 5.) "On January 18, 2022, Customs and

Border Protection ("CBP") agents encountered Petitioner in or near Eagle Pass, Texas. The CBP

---

[1] Petitioner's envelope and the Department of Homeland Security ("DHS") systems identify him as Jaime Hurtado-Barba. (ECF No. 1-2, at 1; ECF No. 5-1, at 2 n.1.) The Clerk is DIRECTED to update the docket to reflect that Petitioner's name as identified above.

agents determined Petitioner had unlawfully entered the United States from Mexico without being admitted or paroled by an immigration officer." (ECF No. 5-1 ¶ 6.) Petitioner was then arrested. (ECF No. 5-1 ¶ 6.) "On or about January 22, 2022, Petitioner's custody was transferred from CBP to ICE." (ECF No. 5-1 ¶ 7.) The following then occurred:

8. On January 26, 2022, Petitioner was issued an Interim Notice Authorizing Parole and was released from ICE custody on January 27, 2022, pending his removal proceedings. The Interim Notice informed Petitioner that his parole was valid for one year beginning on the date of the notice and that it would automatically terminate upon his departure or removal from the United States, or at the end of the one year unless ICE provided him with an extension at its discretion, or upon notice.

9. On August 29, 2025, Homeland Security Investigations ("HSI"), Washington, DC, encountered Petitioner, after being stopped by U.S. Park Police for a commercial vehicle traveling on federal property without a permit. After a database review, it was determined that Petitioner was unlawfully present in the United States, and he was transported to HSI Reston, Virginia for administrative processing and interviews. On the same date Petitioner was taken into civil immigration custody.

10. On October 23, 2025, Petitioner was issued a Notice to Appear ("NTA")[2] that charged him with being inadmissible to the United States (and thus removable from the United States) under 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled, or who arrived in the United States at a place other than designated by the Attorney General, as well as under 8 U.S.C. § 1182(a)(7)(A)(i)(I), as an alien without a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid document.

11. On December 2, 2025, Petitioner filed a motion for custody redetermination— i.e., a request for release on bond—with the Immigration Court. The Immigration Court set a hearing on December 10, 2025, for this motion to be adjudicated.

12. On December 10, 2025, an Immigration Judge ("IJ") denied Petitioner's motion for custody determination due to lack of jurisdiction.[3]

---

[2] A Notice to Appear is a "'[c]harging document' that 'initiates a proceeding before an Immigration Judge.'" *Hasan v. Crawford*, 800 F. Supp. 3d 641, 647 n.3 (E.D. Va. 2025) (quoting 8 C.F.R. § 1003.13).

[3] In his § 2241 Petition, Petitioner notes that he has not been given a bond hearing because of *Matter of Yajure Hurtado*. (ECF No. 1, at 6.) On September 5, 2025, the Board of Immigration Appeals ("BIA") released a precedential decision in *Matter of Yajure Hurtado*. "Pursuant to the BIA's decision in *Hurtado*, nearly all noncitizens who entered the United States without inspection are now subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2), rather than the discretionary detention provisions of 8 U.S.C. § 1226(a)." *Soto v. Soto*, 807 F. Supp. 3d 397, 401 (D.N.J. 2025) (citing *Hurtado*, 29 I&N Dec. at 227–29).

13. Petitioner reserved appeal of the IJ decision, and his appeal was due on January 9, 2026. No appeal was filed with the Board of Immigration Appeals ("BIA").

14. On January 13, 2026, Petitioner appeared with counsel for a master calendar hearing where he admitted the allegations and conceded the charges contained in the NTA.

15. On March 23, 2026, Petitioner's applications for asylum, withholding of removal, and withholding of removal under the Convention Against Torture were denied by an IJ. Petitioner was ordered removed by an IJ on this same date, and reserved appeal.

16. Petitioner's appeal is due to the [BIA] by April 22, 2026.

(ECF No. 5-1 ¶¶ 8–16.) To date, Petitioner has not filed an appeal. *See* https://acis.eoir.justice.gov/en/ (last visited April 6, 2026), type in Petitioner's "A" number, and country of origin and follow "SUBMIT". If Petitioner does not note an appeal by April 22, 2026, his custody status will change to that under 8 U.S.C. § 1231. (ECF No. 5, at 1 n.1.) Petitioner is currently detained in Caroline Detention Center. (ECF No. 1-2, at 1.)

## B.     Procedural Background

On March 11, 2026, Petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1.) On March 24, 2026, the Court ordered Respondents to either file a Notice indicating that the factual and legal issues presented in the petition do not differ in any material fashion from those presented in *Duarte Escobar v. Noem, et al.*, 3:25-cv-258 (E.D. Va.), or an Opposition to the § 2241 Petition discussing the material differences between *Duarte Escobar* and the petition. (ECF No. 4.) On March 30, 2026, Respondents filed their Opposition arguing that material differences exist from *Duarte Escobar*.

3

## II.  Standard of Review

### A.    Petitions for Writs of Habeas Corpus Under 28 U.S.C. § 2241

28 U.S.C. § 2241(a) provides that "[w]rits of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." *Id.* "A federal court may grant habeas relief only on the ground that the petitioner is in custody in violation of the Constitution or laws or treaties of the United States." *Torrence v. Lewis*, 60 F.4th 209, 213 (4th Cir. 2023) (internal citations and brackets omitted).  After receiving the petition and any response thereto, "[t]he court shall summarily hear and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

### B.    Detention Under 8 U.S.C. §§ 1225 and 1226

Section 1225(a) of the INA provides that "[a]n alien present in the United States who has not been admitted or who arrives in the United States . . . shall be deemed for purposes of this chapter an applicant for admission." 8 U.S.C. § 1225(a)(1).  Section 1225 then divides "applicants for admission" into two categories under § 1225(b)(1) and § 1225(b)(2).

Section 1225(b)(2) pertains to the Amended Petition and the parties' filings.  Section 1225(b)(2) provides that if an immigration officer "determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien *shall* be detained." 8 U.S.C. § 1225(b)(2)(A) (emphasis added).  As this Court has previously explained, § 1225 covers individuals "*actively* seeking admission into the country, and not those who have already entered the country." *Duarte Escobar v. Perry*, 807 F. Supp. 3d 564, 576 (E.D. Va. 2025) (emphasis in original) (quoting *Quispe v. Crawford*, No. 1:25-cv-1471 (AJT), 2025 WL 2783799, at *5 (E.D. Va. Sept. 29, 2025)).  Because individuals detained under this section are subject to *mandatory* detention, § 1225(b)(2) "does not grant detainees a bond hearing." *Id.* at 579.

4

8 U.S.C. § 1226, in contrast, establishes "the default rule" for detaining and removing aliens "already present in the United States." *Id.* at 578 (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018)). Section 1226(a) provides that, "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Pending the removal decision, the Attorney General may "continue to detain the arrested alien," *"release the alien on . . . bond of at least $1,500,"* or "release the alien on . . . conditional parole." *Id.* § 1226(a)(1)–(2) (emphasis added). Thus, individuals subject to detention under § 1226(a) are entitled to a bond hearing.

As this Court has previously explained, § 1225 and § 1226 create a dichotomy: § 1225(b)(2)(A) "covers aliens *seeking admission* to the United States" and § 1226(a) "covers aliens *already present* in the United States." *Duarte Escoboar*, 807 F. Supp. 3d at 578. A detainee seeking bond must therefore demonstrate that they are detained subject to § 1226, which permits bond determinations, rather than § 1225, which does not.

## C.    Humanitarian Parole Under 8 U.S.C. § 1182(d)(5)(A)

Even if an individual is classified as an alien "seeking admission" subject to mandatory detention under § 1225, the INA provides that an applicant for admission "may be temporarily released on parole for urgent humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. at 288 (quotation omitted). Specifically, 8 U.S.C. § 1182(d)(5)(A) provides that "[t]he Secretary of Homeland Security may . . . in his [or her] discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States." *Id.* Parole of an alien subject to mandatory detention "shall not be regarded

as an admission of the alien." *Id.*[4] Specifically, "aliens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are treated for due process purposes as if stopped at the border." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020) (quotation omitted).

Section 1182(d)(5)(A) places some limits on humanitarian parole: *"when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served* the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.* (emphasis added).

Regulations implementing this provision of the INA outline further how immigration officials may revoke a detainee's humanitarian parole. Humanitarian parole under § 1182(d)(5)(A) "shall be automatically terminated without written notice . . . at the expiration of the time for which parole was authorized." 8 C.F.R. § 212.5(e)(1)(ii).[5] At that point, "any order of exclusion, deportation, or removal previously entered shall be executed. If the exclusion, deportation, or removal order cannot be executed within a reasonable time, the alien shall again be released on parole unless in the opinion of the official listed [elsewhere in the regulation] the public interest requires that the alien be continued in custody." *Id.* § 212.5(e)(2)(i).

---

[4] The INA further provides in its definitions section that "[a]n alien who is paroled under section 1182(d)(5) . . . shall not be considered to have been admitted." 8 U.S.C. § 1101(a)(13)(B).

[5] The implementing regulations also provide that parole "shall be automatically terminated without written notice . . . upon the departure from the United States of the alien[.]" 8 C.F.R. § 212.5(e)(1)(i). Because Petitioner does not appear to have departed from the United States after his parole into the country, the Court does not discuss this provision of the regulations below.

Not all grants of parole are subject to automatic termination. In cases where a parolee is not subject to the automatic termination of their parole, that parole "shall be terminated upon written notice to the alien and he or she shall be restored to the status that he or she had at the time of parole." *Id.* § 212.5(e)(2)(i). But immigration officials may terminate the parole of an alien not subject to automatic termination only "*upon accomplishment of the purpose for which parole was authorized* or when in the opinion of one of the officials listed [elsewhere in the regulation], neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States." *Id.* (emphasis added). And like parolees facing automatic termination, "any order of exclusion, deportation, or removal previously entered shall be executed" once written notice is provided to these parolees. *Id.* § 212.5(e)(2)(i). Likewise, "[i]f the exclusion, deportation, or removal order cannot be executed within a reasonable time, the alien shall again be released on parole unless in the opinion of the official listed [elsewhere in the regulation] the public interest requires that the alien be continued in custody." *Id.*

### III.  Analysis

Petitioner contends that Respondents have unlawfully subjected him to the mandatory detention provision of 8 U.S.C. § 1225(b)(2)(A), rather than the discretionary detention provision of 8 U.S.C. § 1226(a). (ECF No. 1, at 6.) Petitioner notes that his asylum case is pending, he is not an applicant for admission, and he has not been convicted or arrested for any crime that requires him to be detained. (ECF No. 1, at 6–7.) Because Petitioner is proceeding *pro se*, the Court also construes him to argue that Respondents have deprived him of due process of law by revoking his humanitarian parole under 8 U.S.C. § 1182(d)(5)(A), despite failing to serve the purposes of that parole. In response, Respondents contend that Petitioner is properly detained pursuant to § 1225 and that he has received all the process he is due. (ECF No. 5, at 5–23.)

The Court has recently rejected Respondents' arguments. *Seleznev v. Mullin*, No. 3:26-cv-130, 2026 WL 907692, at *1–7 (E.D. Va. Apr. 2, 2026). The Court will grant the § 2241 Petition. Regardless of the statutory provision under which Petitioner is detained, Respondents have failed to provide Petitioner him with the process due under § 1182(d)(5)(A) and the Fifth Amendment.[6] Because the Court concludes that Petitioner's due process rights have been violated, it need not reach his statutory argument.[7] The Court will order Respondents to release Petitioner.

A.    **Petitioner's Due Process Rights Have Been Violated**

Here, Petitioner is proceeding *pro se* and is detained and his § 2241 Petition must be liberally construed. The Court construes Petitioner to argue that his ongoing detention violates his due process rights under the Fifth Amendment because the purpose of his parole was to allow him to remain in the United States while he pursued his application for asylum and withholding of removal. Petitioner's asylum claim remains pending as he has until April 22, 2026 to file an appeal. Thus, the purpose of his parole has not been served and any attempt to return Petitioner to physical custody before the adjudication of his asylum claim violates the express terms of the

---

[6] The Fifth Amendment to the United States Constitution provides, in pertinent part: "No person shall . . . be deprived of life, liberty or property without due process of law." U.S. Const. amend. V.

[7] Neither Respondent nor Petitioner has provided an agency record showing that Petitioner was paroled under 8 U.S.C. § 1182(d)(5)(A), or if he was conditionally paroled on some other ground. To the extent that he was conditionally paroled or released on his own recognizance, this is "legally distinct" from parole under § 1182(d)(5)(A), and Petitioner would be held under § 1226(a)(1)–(2) making his detention discretionary. *See Hasan*, 800 F. Supp. 3d at 654–55. The Court assumes based on Respondents submissions that Petitioner was granted humanitarian or public benefit parole under § 1182(d)(5)(A).

parole statute.[8]  Respondents, clearly reading this argument into the § 2241 Petition, counter that Petitioner's "due process rights extend no further than what the INA provides" and that, even if the Court determines that Petitioner's due process rights extend beyond the INA, those rights have not been violated.  (ECF No. 5, at 19; *see* ECF No. 5, at 16–23.)

Regardless of whether Petitioner's due process rights are defined by the INA alone or the Fifth Amendment, Respondents have failed to provide Petitioner with the process that he is due. As a result, Petitioner's due process rights have been violated.

**1.    The Court Will Consider the Process Due to Petitioner Under Both the Statutory Scheme and Under the *Mathews v. Eldridge* Framework**

Respondents contend that the INA alone defines Petitioner's due process rights.  (ECF No. 5, at 16–19.)  However, in a similar case, the Court recently determined that Petitioner's due process rights should be analyzed under the Fifth Amendment and the framework established in *Mathews v. Eldridge*, 424 U.S. 319 (1976).  *See Seleznev*, 2026 WL 907692, at *5–7.

The Court is aware that courts in this District have applied both standards.  Some courts have determined that provisions of the INA alone outline the due process rights of parolees like Petitioner.  *See Pipa-Aquise v. Bondi*, No. 1:25-cv-1094 (MSN), 2025 WL 2490657, at *2 (E.D. Va. Aug. 5, 2025) ("[A]n entering alien has only those rights concerning his admissibility as Congress has statutorily provided.") (quotation omitted); *Rodriguez v. Bondi*, No. 1:25-cv-791 (AJT), 2025 WL 2490670, at *3 (E.D. Va. June 24, 2025) ("Where an applicant is an arriving alien, due process only requires those rights regarding admission that Congress has provided by statute.") (quotations omitted).  Other courts have applied the *Mathews* framework to parolees

---

[8] Although Petitioner does not explicitly identify this argument, Respondent has addressed the § 2241 Petition as if he had.  Accordingly, the Court finds it appropriate to generously construe Petitioner to make this argument.

like Petitioner. *See Pineda-Berrios v. Lyons*, No. 1:25-cv-2332 (LMB), 2026 WL 384159, at *5 (E.D. Va. Feb. 11, 2026).

Regardless of which due process framework the Court applies, the answer remains the same: Petitioner's due process rights have been violated.

### 2.    Respondents Have Not Provided Petitioner with the Process Due Under § 1182(d)(5)(A)

Even if Petitioner's due process rights are defined by statute alone, Respondents have not provided Petitioner with due process.

The Court first observes that neither party has described in sufficient detail the statutory and regulatory scheme governing the revocation of parole. Neither Petitioner nor Respondents cite the regulations implementing § 1182(d)(5)(A), which explain the process by which Respondents may revoke parole and what protections Respondents must afford Petitioner. *See* 8 C.F.R. § 212.5(e)(1)–(2). Neither party analyzes the effect of the expiration of Petitioner's parole on his § 2241 Petition. The automatic expiration of an individual's parole typically determines whether or not that individual is entitled to notice before their parole is revoked. 8 C.F.R. § 212.5(e)(1)(ii).

Respondents, meanwhile, do not acknowledge that regardless of the regulatory scheme, § 1182(d)(5)(A) itself provides that the Secretary of Homeland Security shall return an alien "to the custody from which he [or she] was paroled" "when the purposes of such parole shall . . . have been served." Respondents offer no argument as to whether the purposes of Petitioner's parole have been served. The record itself is similarly bereft of any indication that the purposes of Petitioner's parole had or had not been served prior to his detention.

The only issue before the Court is whether Respondents have denied Petitioner due process of law by revoking his parole before its "purposes" had been "served." Courts around

10

the country have determined that, when, as here, a petitioner is paroled into the United States for purposes of applying for asylum, and that asylum application remains pending, revoking parole without a determination as to whether its purposes have been served is inappropriate. *See Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1144–45 (D. Or. July 9, 2025). Because Petitioner's asylum application remains pending, and because Respondents make no argument to the contrary, the Court concludes that Respondents have deprived Petitioner of due process under the provisions of the INA by revoking his parole prior to the service of his parole's purposes.

### 3.  Respondents Also Have Not Provided Petitioner with the Process Due When Applying the *Mathews* Framework

The Court reaches the same answer when it instead applies the framework of *Mathews v. Eldridge*. *Mathews* requires courts to weigh three factors:  (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and, (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335–36.

First, "[t]he interest in being free from physical detention" is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Even if Respondents are correct that a parolee "does not have the same status for due process purposes as an alien who has effected entry," (ECF No. 9, at 21–22 (quotation omitted)), Petitioner still has a significant private interest in remaining free. *See Pineda-Berrios*, 2026 WL 384159, at *6 (finding parolee detained subject to § 1225 had a significant liberty interest).

Second, Petitioner faces a serious risk of the erroneous deprivation of his due process rights. As described above, Respondents place nothing on the record about whether the purposes

11

of Petitioner's parole have been served, despite § 1182(d)(5)(A)'s requirement that an alien may be returned "to the custody from which he [or she] was paroled" "when the purposes of such parole shall . . . have been served." In fact, Respondents argue that Petitioner faces little risk of an erroneous deprivation of his due process rights because, even where he is detained subject to § 1225's mandatory detention provisions, Petitioner has "the ability to seek parole . . . for any 'urgent humanitarian reasons or significant public benefit.'" (ECF No. 5, at 22 (citing § 1182(d)(5)(A)).) Respondents ignore that Petitioner *has already received* humanitarian parole under § 1182(d)(5)(A) and that Respondents have summarily revoked that parole. Petitioner's § 2241 Petition is predicated on the notion that he was validly paroled into the United States; his due process rights are not safeguarded by Respondents' assurances that he could apply for parole *again*.

Third, Respondents have legitimate interests in immigration enforcement. "Congress has repeatedly shown that it considers immigration enforcement—even against otherwise non-criminal aliens—to be a vital public interest." *Miranda v. Garland*, 34 F.4th 338, 364 (4th Cir. 2022). But Respondents "remain subject to an obligation to effectuate [Petitioner's] detention in a manner that comports with due process. Nothing in this record explains why [Respondents] are unable to efficiently enforce the immigration laws . . . while also affording individuals with their core due process right: notice and an opportunity to be heard." *Pineda-Berrios*, 2026 WL 384159, at *7 (quotations omitted). Indeed, the record is bereft of any indication about whether Respondents have determined that the purposes of Petitioner's parole have been served. Respondents have provided Petitioner "with no process at all, much less prior notice, no showing of changed circumstances, or an opportunity to respond." *Id.*

Because all three *Mathews* factors weigh in his favor, the Court must find that Petitioner's due process rights under the Fifth Amendment have been violated.

### B.    The Appropriate Remedy for the Violation of Petitioner's Due Process Rights is Immediate Release

Because Petitioner's due process rights have been violated, the Court must determine the appropriate remedy for that violation. Respondents revoked Petitioner's parole without any determination as to whether its purposes had been served. The only remedy for that violation of his due process rights is release. To be sure, Respondents may well determine that the purposes of Petitioner's parole have been served. But on the record before the Court, without any such determination, Petitioner's detention is improper. The Court will order Respondents to release Petitioner immediately and provide a date certain by which they will hold a hearing at which Respondents will make a determination as to whether the purposes of Petitioner's parole have been served. *See Darwich v. Kemerling*, No. 25-cv-1162, 2026 WL 170801, at *8 (M.D.N.C. Jan. 22, 2026) (finding release to be the proper remedy where alien's parole was detained without explanation).

Because the Court will order Petitioner's release on due process grounds, the Court need not reach Petitioner's arguments with respect to the statutory basis of his detention.

### IV. Conclusion

Because Respondents have failed to provide Petitioner with due process of law, the Court will grant the § 2241 Petition and order Petitioner's immediate release.

An appropriate Order shall issue.

Date: 4/8/26
Richmond, Virginia

/s/
M. Hannah Lauck
Chief United States District Judge

13